**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
SUE COSTELLO,

Plaintiff,

**23-CV-1553 (LGS) (VF)**

-against-

**ORDER**

PARAMOUNT GLOBAL, INC.,

Defendant.

-----------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge**

At Plaintiff's request, the transcripts from the May 31, 2023 and June 5, 2024

conferences are attached to this order and added to the docket in this case.

- **Exhibit A:** Transcript of May 31, 2023 Remote Teleconference before the
  Honorable Lorna G. Schofield

- **Exhibit B:** Transcript of June 5, 2024 In-Person Conference before the Honorable
  Valerie Figueredo

**SO ORDERED.**

DATED:      New York, New York
            June 12, 2024

_____
VALERIE FIGUEREDO
United States Magistrate Judge

# Exhibit A

N5VQcosC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    SUE COSTELLO

4                    Plaintiff

5             v.                            23 Civ. 01553 (LGS)
                                            Remote Teleconference
6
     PARAMOUNT GLOBAL INC.
7
                    Defendant
8
     ------------------------------x
9                                          New York, N.Y.
                                           May 31, 2023
10                                         4:30 p.m.

11   Before:

12                    HON. LORNA G. SCHOFIELD

13                                        District Judge

14                         APPEARANCES

15   SUE COSTELLO, Pro Se

16   WEIL GOTSHAL & MANGES LLP
         Attorney for Defendant YEHUDAH L. BUCHWEITZ
17

18

19

20

21

22

23

24

25

N5VQcosC

1          (The Court and all parties appearing via remote

2     teleconference)

3          DEPUTY CLERK:  In the matter of 23 Civ. 1553.

4          Before we begin, I just want to remind everyone

5     listening that recording or rebroadcasting of this proceeding

6     is prohibited.  Violation of this prohibition may result in

7     sanctions.  I'm going to ask the parties to please state your

8     name when you speak each time you speak because we have a court

9     reporter present.

10         We are here before the Honorable Lorna G. Schofield.

11         THE COURT:  Good afternoon.  So I understand that you

12    may have been on the phone for awhile, so you may have heard

13    some of the prior conference, but I just want to begin from the

14    beginning again.

15         First of all, Ms. Costello, I assume you are not a

16    lawyer and that you are representing yourself as a non-lawyer.

17    Is that right?

18         MS. COSTELLO:  That's correct, your Honor.

19         THE COURT:  Do you want -- I think I understand the

20    basis of your claim, but why don't you tell me about it.

21         MS. COSTELLO:  Okay.  In July of 2017 I had a meeting

22    with Leslie Moonves, who is the head of CBS Corporation.  He

23    had originally given me my first two TV deals.  This was my

24    third time around with him, attesting to my talent and my

25    ability.  So I had a meeting with him about doing my TV show.

N5VQcosC

```
1    He told me that he wanted to do the TV show.  He sent me to the

2    head of casting, which casting sent me to the rest of

3    executives of CBS.  They flew me out to CBS to pitch my TV

4    show.  I pitched my TV show.  There was a lot of back and forth

5    and harassment that went on in between that I'm not sure if you

6    want me to go into right now or if you just want me to keep it

7    broad, but --

8              THE COURT:  Let's keep it at a summary.

9              MS. COSTELLO:  Okay.  So then they offered me a TV

10   deal.  I negotiated it with the head counsel of CBS

11   Corporation, Jonathan Anschell.  That was in June of 2018.

12   Three weeks later, in July, a Rona Barrett article came out

13   about Moonves being -- having sexual assault allegations

14   against him, and then every single day after that, articles

15   kept coming out about him ruining women's careers and paying

16   women off.  And so my deal stated very specifically that I am

17   to sent my script -- this is my third deal, so I'm very well

18   versed in how the business goes.  Once the deal is closed, you

19   get sent into development.  My deal says that I am to send my

20   script to the head of comedy development at CBS Studios in

21   order to get paid under WDA contract, which is my union.

22             CBS had sent me the initial payment for my script on

23   signing, and then I never heard from anybody.  Comedy

24   development never came to me.  So I contacted the only person I

25   had a contact for, which was Jonathan Anschell, and I asked him
```

N5VQcosC

| | |
|---|---|
| 1 | what was going on with my deal, and he said to me, "We have |
| 2 | deals with other women.  What do you want?"  And I said, "I |
| 3 | want to proceed with my contract, with the terms of my |
| 4 | contract.  I want to send my script to the head of comedy |
| 5 | development CBS Studios."  He hung up the phone.  He sent me an |
| 6 | email that said, "Now that I've made allegations against Les |
| 7 | Moonves, I need to send you to our internal investigation." |
| 8 | THE COURT:  Wait.  Wait.  Wait.  Did you make |
| 9 | allegations against -- |
| 10 | MS. COSTELLO:  None.  None. |
| 11 | THE COURT:  Did you say anything about, "Oh, those |
| 12 | things have happened to me" or "I've seen what's happened to |
| 13 | other women"? |
| 14 | MS. COSTELLO:  Never.  Never.  Nothing.  Nothing. |
| 15 | Nothing. |
| 16 | THE COURT:  What do you -- so he was just out of |
| 17 | nowhere saying, "Now that you've made allegations"? |
| 18 | MS. COSTELLO:  Yes, out of nowhere. |
| 19 | THE COURT:  Okay, go ahead. |
| 20 | MS. COSTELLO:  **And then so the internal investigation** |
| 21 | **contacted me, and I was like, "I don't need to go to the** |
| 22 | **internal investigation.  I have a television deal.  I want to** |
| 23 | **move forward with my television deal."** |
| 24 | So I didn't go to the internal investigation.  I went |
| 25 | to the WDA, which is my union.  The head attorney for WDA |

N5VQcosC

1   contacted Jonathan Anschell and said to hold him to the

2   contract, and he said to send the script to Tom Sherman, but

3   Jonathan Anschell and Tom Sherman were the only two executives

4   at CBS that I had any contact with prior to this.

5           THE COURT:  Okay.

6           MS. COSTELLO:  My deal says that I send my script to

7   the head of comedy development.  Jonathan told the WDA to have

8   me send my script to Tom Sherman.  That was not in the lines of

9   the contract.  So then I got an attorney, I hired an attorney.

10  The attorney called Jonathan, and then Jonathan lied to the

11  attorney, then Jonathan lied to me about what the attorney

12  said.

13          I got rid of the attorney.  Then I went back to

14  Jonathan.  Jonathan -- I have emails -- I have a hundred emails

15  of me asking them to let me proceed -- begging them to let me

16  proceed with my deal.  I have emails from Jonathan lying that I

17  had a deal, I don't have deal, the deal expired.  And this is a

18  pattern of abuse that I can prove that they did time and time

19  again to me.

20          And then I went to Joe Ianniello, the head CEO, I went

21  to the board of directors, I went to Robert Backish, I went to

22  everybody trying to proceed with my deal.  They ignored me and

23  shut it down.

24          And then that's when I filed a police report, because

25  when I pitched my show back in the spring, they pushed me out

N5VQcosC

1    of the room and took my idea.  The reason why I did the deal

2    with them was to protect me from them stealing my idea, and in

3    deal the second paragraph in my signed letter says that I can

4    buy my script back immediately if they pass on it.

5            So they did not abide by any of the terms of the

6    contract.  And what happened was, so then I filed a police

7    report because I wanted to protect my idea, and because of all

8    the confusion with the #MeToo, I couldn't get anybody to

9    represent me.  Nobody was understanding what was going on until

10   the New York Attorney General's office called me into their

11   office and they showed me the email between Leslie Moonves, Gil

12   Schwartz and Jonathan Anschell saying that they gave me the

13   deal behind me back, and also another email from Leslie Moonves

14   saying, "I feel bad.  Tell them how much I like her."  That's

15   when I knew that they had committed fraud, and that's when I

16   filed my lawsuit

17           THE COURT:  Okay.  What I would like to do before we

18   get too far afield, I'll hear from the lawyer for the

19   defendant.  But what I would like you to do is just -- I

20   understand you had various arguments about a motion to dismiss.

21   We won't get into those yet.  Just give me a very short summary

22   that is responsive to what we just heard.

23           MR. BUCHWEITZ:  Sure, your Honor.

24           THE COURT:  If you know or have anything.  You may not

25   be in a position yet.

N5VQcosC

1          MR. BUCHWEITZ:  Yes, your Honor.

2          So Ms. Costello does in fact have a contract.  She was

3    paid 15 percent at signing.  The next step in the contract was

4    submitting a script, at which point she would receive the next

5    payment.  She was told repeated that she could submit her

6    script, and she would get the next payment, and she never has.

7    It's that simple.

8          THE COURT:  Okay.  Is the contract terminated now?  Is

9    it still an option for her to submit the script?

10         MR. BUCHWEITZ:  I think there's a question of whether

11    it's still open; but I told her last year when I spoke to her

12    on the phone, if she submits the script, we'll consider it.

13    And she still didn't.

14         THE COURT:  Okay.  Let's talk about litigation for a

15    minute.  I don't know how much you are familiar, Ms. Costello,

16    with lawsuits and sort of the various steps in the lawsuits,

17    but as I explained in the other case, there is a very

18    preliminary step that comes first, and there is even a step

19    before the one I discussed in the other case; and, that is, I

20    need to make a determination that you are -- you and your case

21    are properly before me.  And that is something I have to assure

22    myself of before I go any further.  If you should be litigating

23    in state court, for example, or if you should be arbitrating,

24    for example, then with you don't belong before me.  And that's

25    a legal question and that's a legal question I have to answer

N5VQcosC

1    first.

2            What the defendant has said here, among other things,

3    is that there was an arbitration provision in your agreement,

4    and that because of this arbitration provision, this lawsuit is

5    required to be arbitrated.  And if that's the case, then it is

6    something that I won't and could not adjudicate.  It's

7    something that I would have to refer to arbitration.  I

8    understand that you are -- you've cited the Ending Forced

9    Arbitration of Sexual Assault and Sexual Harassment Act of

10   2021, but under the law, that statute doesn't have a

11   retroactive effect.  It only applies to claims that accrued on

12   or after March 3, 2022, which is the day that it was actually

13   signed into law.  And the events that occurred here happened

14   before March 3, 2022.  So that's the question that I have to

15   decide first.

16           So what I am going to do is I am going to set a

17   schedule for just that motion, so that I can decide that first

18   and see whether we belong in this court.  And that is a motion

19   that the defendant writes and submits and files in court.  And

20   then you have an opportunity to file a response.  I should tell

21   you though that because you're not a lawyer, I am, of course,

22   interested in whatever arguments you want to make, but it's

23   basically a legal question.  And so I won't just rely on what

24   the defendant says.  I will, of course, do my own research and

25   my own legal analysis to determine what the correct legal

N5VQcosC

```
 1   answer is, and you can certainly put in your response to assist
 2   me doing that or to tell me about the -- the statute that you
 3   referenced or whatever else you want to put in it, but I just
 4   want to reassure you that it isn't held against you that you
 5   are not a lawyer or that you don't have a lawyer in the
 6   lawsuit.
 7           And then I typically, but not always, get a reply from
 8   the party that filed the motion because they have the burden of
 9   proving that they're correct.
10           So my question for Mr. Buchweitz is, when would you
11   like to file your motion?  I'm limiting it to the motion to
12   compel arbitration.
13           MR. BUCHWEITZ:  Okay.  And everything else would be
14   reserved, if necessary, for a future date?
15           THE COURT:  Yes.  Yes.
16           MR. BUCHWEITZ:  Okay.  Okay.  Two weeks?
17           THE COURT:  Okay.  Two weeks is fine.
18           And then, Ms. Costello, how long would you like to put
19   in a response?
20           MS. COSTELLO:  Two weeks, please.
21           THE COURT:  All right.
22           MS. COSTELLO:  Your Honor, may I ask a question?
23           THE COURT:  Yes, of course.
24           MS. COSTELLO:  I'm accusing them of fraud.  I can
25   prove that they committed fraud, so that negates the contract,
```

N5VQcosC

| | |
|---|---|
| 1 | that makes it void.  So how does that -- |
| 2 | THE COURT:  What you can do is put in your response |
| 3 | that exactly what you just told me; that you're alleging fraud, |
| 4 | and you believe that that negates the arbitration provision. |
| 5 | MS. COSTELLO:  Okay. |
| 6 | THE COURT:  And that, of course, is something that I |
| 7 | would look into.  And I'm going to schedule a date for a reply |
| 8 | brief.  Why don't I schedule it for -- is a week okay for |
| 9 | reply, Mr. Buchweitz? |
| 10 | MR. BUCHWEITZ:  Probably.  Just trying to figure out |
| 11 | what day that falls on.  I'm sorry. |
| 12 | THE COURT:  Okay, let me -- |
| 13 | MR. BUCHWEITZ:  I'm okay.  I got my calendar here.  If |
| 14 | you wouldn't mind, I'm away that week.  Can I do Monday of the |
| 15 | following week? |
| 16 | THE COURT:  Of course, that's fine.  So why don't we |
| 17 | do Tuesday, so you're not working all weekend. |
| 18 | MR. BUCHWEITZ:  Okay. |
| 19 | THE COURT:  We'll do it Tuesday of the following week. |
| 20 | So each of the first two submissions is limited to 25 pages, no |
| 21 | more than 25 pages, and the reply is limited to 10 pages. |
| 22 | Okay? |
| 23 | So I think that is everything we need to discuss right |
| 24 | now.  I want to deal with that issue before we deal with |
| 25 | anything else because if I am not adjudicating this, then I |

1    shouldn't be entertaining any other applications or motions.

2           But I will try and get that decided quickly so we can

3    figure out what step comes next.

4           Is there anything else, Ms. Costello?  Do you have any

5    questions or anything you want to the ask or raise?

6           MS. COSTELLO:  Yes, I have a question about, did you

7    tell me what the date was two weeks after the date when my

8    reply is going to be do or will I get that through email?

9           THE COURT:  What I am going to do is a written order.

10   But let me just look at a calendar so there is no question

11   about this.  Today is 31st.  June 14 would be the date for his

12   motion.  June 28 would be the date for your response.  And

13   July 11 would be the date for the reply.  Why don't we say the

14   12th for the reply instead because I just noticed the 4th of

15   July weekend is in there.  We'll say July 12 for the reply.

16   And I will put it in a written order.

17          Ms. Costello, do you have access to pacer so that you

18   see what's on the docket, or by mail?

19          MS. COSTELLO:  Yes.  Yes.  Both, I get it through

20   email and on the docket.

21          THE COURT:  Perfect.  I'll put the order on the

22   docket, and you should be able to see it.

23          All right.  So we are adjourned.  I will let you get

24   off the phone.  There is one more matter.  I am going to get

25   off the phone as well.  (Adjourned)

# Exhibit B

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                         Docket #23cv1553
 COSTELLO,                          :

                   Plaintiff,       :

   - against -                      :

 PARAMOUNT GLOBAL, INC.,            :  New York, New York
                                       June 5, 2024
                   Defendant.       :

------------------------------------ :

                       PROCEEDINGS BEFORE
                 THE HONORABLE VALERIE FIGUEREDO,
                  UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          SUE COSTELLO, Pro Se
                        120 Quincy Shore Drive
                        Quincy, Massachusetts 02171

For Defendant:          WEIL, GOTSHAL & MANGES LLP
                        BY:  YEHUDAH BUCHWEITZ, ESQ.
                        767 Fifth Avenue
                        New York, New York 10153
```

```
Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Email:  Transcription420@aol.com
```

```
Proceedings recorded by electronic sound recording; Transcript
produced by transcription service.
```

2

<u>**INDEX**</u>

**E X A M I N A T I O N S**

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-<br>Direct**</u> | <u>**Re-<br>Cross**</u> |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| <u>**Exhibit<br>Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir<br>Dire**</u> |
|---|---|---|---|---|
| None | | | | |

3

```
 1
 2          THE CLERK:  Good morning, Your Honor, this is
 3   the matter of Costello v. Paramount Global, Inc., case
 4   number 23cv1553.  Plaintiff, can you please state your
 5   appearance for the record.
 6          MS. SUE COSTELLO:  Sue Costello.
 7          THE CLERK:  Defense.
 8          MR. YEHUDAH BUCHWEITZ:  Yehudah Buchweitz, Weil
 9   Gotshal for Paramount Global.  Good morning.
10          THE COURT:  Good morning, everyone.  So since
11   Ms. Costello's pro se and this case just recently got
12   assigned to me, I typically like to have cases with pro
13   se plaintiffs or defendants in court so you have an
14   opportunity to talk to me, tell me anything that you'd
15   like to raise.  And so I scheduled the conference for
16   that reason and then also because you had submitted
17   various letters on the docket raising certain issues.
18   So I just wanted to give you an opportunity to address
19   those.
20          I will say, because this case just came to me
21   relatively recently from Judge Schofield, I haven't
22   otherwise been involved in the case.  So I'm happy to
23   hear I guess, Ms. Costello, if there's any issues you
24   want to raise or discuss with me.
25          MS. COSTELLO:  Thank you very much for your
```

4

time and thank you for meeting me in person.  I really
appreciate that because this has been a very long fight,
seven years.  In July it'll be seven years since I met
with (indiscernible) to do my TV show.  So here we are,
thank you.

First of all, I have to bring to this Court's
attention the abuse, just the absolute horrific abuse
that I've suffered and the manipulation and the lies and
the fact that the defendant has used the press, the New
York Attorney General's Office, and now is using the
court to sexually harass me.

THE COURT:  To?  Did you say sexually harass
you?

MS. COSTELLO:  To sexually harass me.  This has
been a very complicated case because they're sexually
harassing me by trying to force me into looking like
somebody who had a sexual situation with Les Moonves.
That's why it's so complicated, that's why people had
such a hard time figuring out what was going on.

I was brought into the New York AG's Office on
April 5, 2022.  I never knew what was going on with my
deal.  I had no idea why they weren't honoring it and
why they were blocking me or why they were harassing me
like they were until I went into the New York Attorney

```
                                                                5
1
2   General's Office and was bullied, harassed, humiliated,
3   and sexually abused for three hours like I was some sort
4   of sexual, like I was trying to extort them for
5   something sexual.  Three hours.
6              THE COURT:  Can I ask you a question?  Are
7   these allegations in your complaint?
8              MS. COSTELLO:  Yes, everything's in the
9   complaint.
10             THE COURT:  Okay.
11             MS. COSTELLO:  It's in the call, the conference
12  call.  I've said it all along.  I tried to file under
13  H.R. 445 and the judge dissuaded me from filing under,
14  and it's not true, she said that in March 2022 is when
15  the law went into effect.  Well, April 2022 falls under
16  that statute.  I have all the emails right here from the
17  Attorney General's Office that, the way that they framed
18  me in the Attorney General's Office.  They sent me the
19  emails.  They also proved the fraud that the defendant
20  committed fraud with my television contract.
21             So what they did was they gave me a television
22  contract with the intent to frame me into the Les
23  Moonves sexual allegations.
24             THE COURT:  And let me just ask, are these
25  emails attached to your complaint?
```

```
1                                                          6
2              MS. COSTELLO:  No, because they wouldn't give
3    them to me while they were doing their investigation.
4    And I asked Judge Schofield if I could submit them; she
5    denied it.  I asked if I could argue for H.R. 445.  She
6    dissuaded me from it.  I asked if I could reargue my
7    fraud case once I had these, and the judge denied it,
8    which was, it was in my right to reargue, and she didn't
9    let me reargue it.
10             THE COURT:  Can I just ask a question of Mr.
11   Buchweitz.
12             MR. BUCHWEITZ:  Yes, Your Honor.
13             THE COURT:  I'm sorry for mispronouncing --
14             MR. BUCHWEITZ:  No, you got it right.
15             THE COURT:  Okay.  Can you just remind me of
16   the procedural postures?
17             MR. BUCHWEITZ:  Yes.  The complaint was filed
18   in 2023, February 2023.  There was a preliminary
19   conference with Judge Schofield on May 31.  We had done
20   a premotion letter to move to compel arbitration as well
21   as other grounds.  The judge said limit your motion to
22   motion to compel arbitration.  We did so.  It was fully
23   briefed in the summer of 2023.  Ms. Costello had an
24   opportunity to put in all of her arguments in response.
25   And in February of 2024 the order came down compelling
```

7

1

2    arbitration.  Each of the points that have come up in

3    various correspondence, whether the H.R. was retroactive

4    effect, whether there was unconscionability were all

5    well addressed in full in the judge's order in February

6    2024.

7          At that point in time, the Court said the case

8    is stayed pending Ms. Costello filing arbitration.

9    There were a number of dates for when a status report

10   would be due.  At each of these points no arbitration

11   was filed, and it's still the status today.  There was

12   supposed to be a status report filed as yesterday or two

13   days ago, Monday, June 3, but Your Honor granted a

14   request from Ms. Costello to extend her time to file the

15   arbitration to July 1, 2024.

16         Based on the prior orders, you know, the things

17   that Judge Schofield said was that if arbitration was

18   not filed by first it was a date in April, then June 3,

19   the case may be dismissed for failure to prosecute, and

20   the status is as I described it, she has until July 1,

21   2024 to file arbitration in JAMS this agreement to

22   arbitrate that was entered in 2017.

23         MS. COSTELLO:  And my argument is that that

24   arbitration clause and the contract are both void

25   because it falls under, first of all, it could be either

8

1

2 H.R. 445 or a fraud, either one.  I have all the proof

3 of it.  The judge did not let me argue everything the

4 way that I wanted to argue it.  She did not let me

5 reargue the fraud.  She did not let me argue H.R. 445

6 either.  So those things are lies.  I have the

7 transcript of the call.

8 On the call the judge put words in my mouth to

9 lead me to sound like I was saying that something sexual

10 happened to me with Les Moonves.  This whole thing has

11 been to frame me into the MeToo movement, and their

12 arbitration move, that's the only move they have.  That

13 was the only move they have was to put me into

14 arbitration so that they can continually harass me.

15 There's proof in the press they did it to Eliza Dushku.

16 They framed her and tried to ruin her career in

17 arbitration.  She broke her NDA through the arbitration

18 because they had done that to her during the MeToo

19 movement.

20 THE COURT:  So, Ms. Costello, I don't – I'm not

21 trying to – I guess I'm a little restricted in what I

22 can do at the moment given that Judge Schofield already

23 addressed whether you have to go to arbitration.  I

24 can't just undo what she did there.  And it seems like

25 your case here would be stayed, so you wouldn't lose the

```
                                                        9
1
2   opportunity to continue litigating here once you finish
3   with the arbitration.
4          So it seems like it would be in your best
5   interest to just also file for the arbitration and go --
6          MS. COSTELLO:  Well, I don't feel safe.
7          THE COURT:  You don't --
8          MS. COSTELLO:  I do not feel safe going into
9   arbitration with the vicious, horrific, I mean it's been
10  - I don't understand what's going on here.  It's been in
11  the press the way they treat women.  Their internal
12  investigation, I've been harassed by the press, Rachel
13  Abrams, because she got the leak of the internal
14  investigation.  She came to me and started harassing me.
15  They've harassed me, they've abused me.  I don't feel
16  safe.  I would go into arbitration, I would do whatever
17  I needed to do to protect myself from what they did to
18  me with my television deal.  But I do not feel safe.
19  And there's a precedent set with the way that they treat
20  women in arbitration.
21         THE COURT:  Well, so --
22         MS. COSTELLO:  That's why I went to the judge.
23         THE COURT:  And so I hear you on these
24  concerns.  The arbitration would be with JAMS.  It's a
25  completely neutral third party.  It wouldn't just be --
```

```
 1                                                    10
 2          MS. COSTELLO:  It was neutral when Eliza Dushku
 3  was in there as well.
 4          THE COURT:  No, and I understand that, but I
 5  guess the problem is there's not much I can do at the
 6  moment --
 7          MS. COSTELLO:  Okay.
 8          THE COURT:  -- if you have an order from Judge
 9  Schofield --
10          MS. COSTELLO:  Okay, but my concern is also
11  that Judge Schofield worked for the law firm that did
12  the internal investigation that I want to bring forth
13  court.  So I have a very big concern about that too, and
14  I want that on the record.  I have a very big concern of
15  how she put words into my mouth during the transcript to
16  lead me to talk about that Les did something sexual to
17  me.  I have huge concerns about the fact that she didn't
18  let me reargue the fraud.  I have huge concerns that she
19  took a year to make a decision on the motion.  And from
20  my understanding those are all bases for me to be able
21  to file a complaint.
22          So I am not going to be forced into arbitration
23  when I have the right to file under H.R. 445 and fraud
24  and I wasn't allowed to argue this correctly.  So --
25          THE COURT:  So I guess you've made a few
```

```
 1                                                    11
 2  points.  I just want to respond to them as best I can.
 3  Presumably, you would've raised the issue with whatever
 4  law firm Judge Schofield worked before.  You raised that
 5  with her?
 6           MS. COSTELLO:  Uh huh.
 7           THE COURT:  Okay.  So typically, you know, it's
 8  up to every judge to decide on what basis to recuse
 9  themselves, so you would've --
10           MS. COSTELLO:  I only raised it after the fact
11  - excuse me, I only raised it after the fact when I
12  realized how unfair she was being to me, and I've spoken
13  to other people who I've gotten consultations with
14  attorneys who said that she wasn't following the law,
15  that she was being unfair, and that she was looking
16  extremely biased to the defendant.
17           THE COURT:  Well, so, but, again, on that basis
18  there's really, again, not much I can do because it's up
19  to each judge to decide when to recuse themselves if
20  it's necessary.  So if you raised the issue with her and
21  she found that there wasn't any basis for a recusal,
22  that's not something I can --
23           MS. COSTELLO:  Well, she sent it to you though.
24           THE COURT:  She sent me the case - she's still
25  the district judge on the case --
```

```
 1                                              12
 2            MS. COSTELLO:  I know, but she sent it to you
 3   as soon as I raised the issue.  So I have extreme
 4   concern about that too.  I want all this on the record.
 5            THE COURT:  We're, we are - there's a recorder
 6   --
 7            MS. COSTELLO:  Good.
 8            THE COURT:  -- and it'll be transcribed --
 9            MS. COSTELLO:  And a transcript that I have
10   here has either been doctored or whoever wrote this
11   transcript was very incompetent.  They wrote Rona
12   Barrett instead of Ronan Farrow.  I want it on the
13   record Ronan Farrow.
14            THE COURT:  So, again, this conference will be
15   transcribed.  We will order the transcript, it would be
16   put on the docket --
17            MS. COSTELLO:  Right, but this transcript is
18   not what I said on the call.
19            THE COURT:  Yes, and --
20            MS. COSTELLO:  And Rona Barrett is a 92-year-
21   old gossip columnist from the 70's, and Ronan Farrow is
22   the journalist that broke the MeToo story.  So I want
23   that very clear.
24            THE COURT:  Okay, and so, and, again, the court
25   reporters are, you know, work very hard and they're very
```

```
 1                                                   13

 2  diligent, but sometimes names --

 3           MS. COSTELLO:  There's no confusion.  When I

 4  say Rona Barrett or I say Ronan Farrell, there is no

 5  confusion.

 6           THE COURT:  And I understand that, and you've

 7  made it clear that there was a mistake in that

 8  transcript.  Do you have the date of the conference just

 9  so --

10           MS. COSTELLO:  Yes, I do.

11           THE COURT:  -- it's absolutely clear.

12           MS. COSTELLO:  I have the whole conference.  I

13  have the whole script right here.

14           THE COURT:  I just need the date --

15           MS. COSTELLO:  And I have the words that the

16  judge said to me when I was talking.  I also have that

17  she interrupted me when I was trying to talk about the

18  fraud.  There's extreme bias going on right here, and

19  I'm not going to stand for it.  I'm not going to be

20  pushed around.  I'm not.  I want that on the record.

21           THE COURT:  So, again, all this is on the

22  record.  Just to go back to a few points that you made.

23  It's, again, it sounds like Judge Schofield issued an

24  order compelling arbitration.  I understand you think

25  she has a bias or a conflict --
```

```
 1                                                 14
 2            MS. COSTELLO:  I also think it's illegal what
 3   she's doing.
 4            THE COURT:  And that's --
 5            MS. COSTELLO:  It's absolutely illegal.  I fall
 6   under the H.R. 445 --
 7            THE COURT:  And --
 8            MS. COSTELLO:  The Attorney General sexually
 9   harassed me on April 5, 2022.
10            THE COURT:  And --
11            MS. COSTELLO:  I have all the emails.  I'll
12   show you exactly how they framed me and how they made it
13   out.  I have emails where Jonathan Ansel (phonetic), Les
14   Moonves, that's how they were planning on how they kept
15   the deal small.  I have every single email.  I have
16   every email that was in the Attorney General's Office,
17   and I have my side of the emails.  So I can prove the
18   framing.  I'm not going to be pushed around, and I'm not
19   going to settle for this transcript with the judge was
20   pushing me to try to say that Les Moonves sexually
21   harassed me.  I'm not doing it.  Because that
22   constitutes the judge sexually harassing me.  Okay?  So
23   that's on the record.  The New York Attorney General
24   sexually harassed me, and then the judge did it.  If
25   you'd like me to read what it says exactly, I'll say it.
```

```
 1                                               15
 2           THE COURT:  No, I mean I don't think you need
 3  to read it, but I think what we're losing sight of is
 4  what I help you with.  And --
 5           MS. COSTELLO:  I'm not losing sight of
 6  anything.  I just want this on record so that I can make
 7  sure that when I go after the judge, I have this on the
 8  record, and that you're very aware of what I told you.
 9  I want to make sure that everybody is very aware of what
10  I told them.  That's what I'm doing here today.
11           THE COURT:  Okay, and then so, and for those
12  purposes, again, this is going to be transcribed, I'll
13  put it on the record.  You will receive a copy.
14           MS. COSTELLO:  It needs to be on the docket.
15           THE COURT:  Yes.
16           MS. COSTELLO:  This one wasn't on the docket.
17           THE COURT:  Do you have the date of that
18  conference?
19           MS. COSTELLO:  Yes, I do.  I have the whole
20  thing right here.
21           THE COURT:  I just need the date.
22           MS. COSTELLO:  May 31, 2023 at 4:30 p.m.
23           THE COURT:  May 31, 2023?
24           MS. COSTELLO:  Yes.  But I really do want to
25  read what the judge said to me.  I want it on the record
```

1                                                              16

2   that, I want it.

3          THE COURT:  Well, so if that's a transcript

4   from a conference with the judge, I'll go on the docket.

5   If it's not there, I'll make sure it's uploaded --

6          MS. COSTELLO:  It's not on the docket.  I had

7   to request it.

8          THE COURT:  Okay, and I --

9          MS. COSTELLO:  It's another one of my concerns

10  is that this call where I say everything that I said in

11  my claim, everything that I've said I never wavered on

12  my story.  Everything is the same.  I don't know what's

13  going on, why everybody is trying to force me into

14  arbitration when I have a legitimate case to go to

15  court.  I want to go to court.

16         THE COURT:  And so, okay, a few things.  I will

17  look at the docket and make sure that the transcript

18  from May 31 is on the docket.

19         MS. COSTELLO:  Thank you.

20         THE COURT:  The transcript from today will be

21  on the docket.

22         MS. COSTELLO:  Thank you.

23         THE COURT:  I understand you want to be in

24  court.  It sounds like Judge Schofield found that there

25  was an agreement that required you to arbitrate.  The

```
                                                          17
 1
 2   case isn't going to be dismissed --

 3            MS. COSTELLO:  Yeah, and the agreement was

 4   fraudulently induced.  They're the ones – can you ask

 5   the defendant these questions?  This is what I want you

 6   to ask him so we can clarify on the record.  I just want

 7   these questions answered on the record.  Is it customary

 8   to pay somebody for a script and then not go after them

 9   for what they bought?  I would like the defendant to

10   answer that question.

11            THE COURT:  But this isn't – this isn't really

12   that type of proceeding, and so this is what I think, if

13   you want these questions answered, you have a venue

14   which is the arbitration with JAMS where you can raise

15   these issues.

16            MS. COSTELLO:  But I shouldn't be going to

17   arbitration.

18            THE COURT:  But the judge already ruled that

19   you have to.

20            MS. COSTELLO:  Right, the judge ruled wrong.

21            THE COURT:  And I get that --

22            MS. COSTELLO:  Yes.

23            THE COURT:  -- and what you can do is you can

24   go to arbitration, and then if you need to appeal her

25   determination once you get a final judgment here --
```

```
 1                                                          18
 2              MS. COSTELLO:  But why would I go to
 3    arbitration and then appeal her decision?  Why don't I
 4    just appeal her decision beforehand?
 5              THE COURT:  I don't think you have a final
 6    judgment here to appeal.
 7              MS. COSTELLO:  Just based on the arbitration
 8    motion.
 9              THE COURT:  I don't --
10              MS. COSTELLO:  I thought it wasn't appealable
11    if you went to forced arbitration.
12              THE COURT:  Actually --
13              MS. COSTELLO:  It's not.
14              THE COURT:  -- do you happen to know?
15              MR. BUCHWEITZ:  Under the FAA the denial of a
16    motion to compel arbitration is appealable, but the
17    grant of a motion to compel arbitration is not.
18              MS. COSTELLO:  Yes, so I'm not going to go into
19    - that's the only reason.  I want to be very clear, I
20    have been nothing but fair.  This is my third television
21    deal with CBS.  The first two were absolutely fine.
22    This third one happened when they tried to frame Les
23    Moonves into the MeToo movement.  They blocked my deal.
24    I had to deal with them, and as soon as I wouldn't go
25    along with saying sexual things about Les Moonves, they
```

```
                                                          19
 1
 2   retaliated against me.  They've used the New York
 3   Attorney General's Office, now they're using the court.
 4   They've used the press to retaliate against me.  And I
 5   don't feel safe going into arbitration, and I'm covered
 6   under H.R. 445.  April 25, 2022 is within the statute of
 7   H.R. 445.
 8          THE COURT:  Okay.  So I'm not sure - I'm going
 9   to try to be as clear as possible, and I'm really not
10   trying to be dismissive in any way.  It's just my,
11   there's not much I can do for you given a ruling that
12   you have to go to arbitration.  And so --
13          MS. COSTELLO:  Okay, can I just interrupt you
14   for one second?
15          THE COURT:  Yes --
16          MS. COSTELLO:  Because I want to be very clear.
17          THE COURT:  -- no, go ahead.
18          MS. COSTELLO:  You just told me to go to
19   arbitration and then to appeal it.  I know for a fact
20   that I can't do that.  So you're giving me advice that
21   goes against what the law is.  So --
22          THE COURT:  Well, I'm not --
23          MS. COSTELLO:  -- I'm having concerns about
24   that too.  I'm a pro se attorney, litigant.  The court
25   is supposed to be fair.
```

1

2          THE COURT:  Yes, I'm not giving you legal

3   advice, and what I indicated, was once you have a final

4   judgment, so you can't appeal a decision right now that

5   you were sent to arbitration, but once everything's

6   completed, you might be able to appeal then.

7          MS. COSTELLO:  Might.

8          THE COURT:  Well, I'm not your attorney, so I

9   don't, and I was definitely never an arbitration lawyer,

10  so --

11         MS. COSTELLO:  Well, but the attorney just, for

12  the defendants just said that I cannot appeal the

13  judgment with the --

14         THE COURT:  You cannot appeal right now the

15  decision to --

16         MS. COSTELLO:  I understand that.

17         THE COURT:  -- compel arbitration, but that's

18  different than once you finish the whole process.  But

19  in any case, I did give you a deadline which, based on

20  the various other deadlines that Judge Schofield had set

21  --

22         MS. COSTELLO:  Right, and in good faith I have

23  been talking to JAMS.

24         THE COURT:  Okay, well, that's good.  And so I

25  think it seems like it would be in your – I would

                                                         21

1
2    encourage you to file whatever you're going to file for
3    arbitration by July 1.  If you need a little it more
4    time, I'm happy to give you more time.
5           MS. COSTELLO:  I do need a little more time
6    because, as I mentioned, my father and my brother died
7    during this year while I've been going through this.
8           THE COURT:  All right, I'm really sorry to hear
9    about that --
10          MS. COSTELLO:  Yeah, well, that's what the
11   defendant has done to me.  They sexually harassed me.
12   They've harassed me.  They interrupted my career.  They
13   physically robbed me.  I have a police report from when
14   they robbed me, and the court is somehow just siding
15   with them.  And my father and my brother died this year
16   while I've been, right around the time when this
17   conference call happened, and I have the conference call
18   that's not even, it's doctored, it's not even right.  So
19   I do need more time.
20          THE COURT:  Okay, so, again, I'm happy to give
21   you more time --
22          MS. COSTELLO:  Thank you.  Till when?
23          THE COURT:  So today is June 5, and the
24   previous deadline was July 1.  I can give you till the
25   end of July, and that's nearly two full months.

```
 1                                                    22
 2              MS. COSTELLO:  Okay.
 3              THE COURT:  Okay.
 4              MS. COSTELLO:  Thank you, because that's what I
 5    requested originally.
 6              THE COURT:  So the last day in July that's a
 7    business day is July 31.  So I'll enter an order
 8    extending the deadline by July 31.  But absent
 9    extraordinary circumstances that deadline can't get
10    extended again.
11              MS. COSTELLO:  Yes, and I appreciate you
12    meeting with me because I understand that you haven't
13    been part of this, but every time I meet with somebody
14    new, the defendant frames it and then they attack me,
15    and then I have to defend myself.  This has been going
16    on for seven years.  So even if we go into arbitration,
17    the defendant's going to be just as dirty as they've
18    been all along.  So I have to prepare myself completely
19    --
20              THE COURT:  Okay, and
21              MS. COSTELLO:  -- to all their dirty tactics.
22              THE COURT:  And that's why I'm happy to give
23    you more time --
24              MS. COSTELLO:  Thank you.
25              THE COURT:  -- to prepare the filing --
```

```
 1                                                          23

 2              MS. COSTELLO:  Thank you.

 3              THE COURT:  -- for arbitration.  But because,

 4   again, there's, given the posture of the case, I would

 5   urge you file something by July 31.  Is there anything

 6   else?

 7              MS. COSTELLO:  No.  That's it.  I appreciate

 8   it, and I'm going to make sure --

 9              THE COURT:  Okay, and I will --

10              MS. COSTELLO:  The transcripts are both going

11   to go on the docket.

12              THE COURT:  Yes, I will put the transcript for

13   May 31 on the docket, 2023, and I will put the

14   transcript from today on the docket.

15              MS. COSTELLO:  Thank you very much.  I really

16   appreciate you meeting with me.

17              THE COURT:  Okay, no problem.

18              MS. COSTELLO:  Thank you.

19              THE COURT:  Thank you so much, everyone.

20              MR. BUCHWEITZ:  Thank you.

21              (Whereupon the matter is adjourned.)

22

23

24

25
```

24

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of COSTELLO v.

PARAMOUNT GLOBAL, Docket #23cv1553, was prepared using

digital transcription software and is a true and

accurate record of the proceedings.




Signature   ____*Carole Ludwig*____

                 Carole Ludwig

Date:   June 6, 2024